W. W. NICHOLAS, Appellee, v. IOWA MERCHANTS MUTUAL INSURANCE COMPANY, Appellant.

**Insurance:** INCREASE OF HAZARD: FINDING OF JURY. In an action on 1 an insurance policy, the question of whether a change in occupancy without consent increased the risk so as to avoid liability, was properly submitted to the jury, and its finding having support in the evidence is conclusive.

**Waiver of proofs of loss.** An insurance company, by its conduct, 2 may waive proofs of loss, as provided by statute and its contract. Evidence reviewed and held to warrant a submission of the question of waiver to the jury.

**Increase of hazard.** The fact that the contents of a dwelling are 3 insured, will not, in the absence of fraud or overinsurance, increase the building hazard.

*Appeal from Osceola District Court.*— HON. F. R. GAYNOR, Judge.

THURSDAY, OCTOBER 20, 1904.

ACTION at law upon a policy of fire insurance. Defense, change in occupancy of the building insured, and failure to make due proof of loss. Trial to a jury. Verdict and judgment for plaintiff, and defendant appeals.— *Affirmed.*

*F. L. Ferris* and *O. J. Clark,* for appellant.

*C. M. Brooks,* for appellee.

DEEMER, C. J.— The property insured was a frame dwelling house. It burned on November 15, 1901. At the time the policy was issued the property was occupied by the insured as a place of residence. Thereafter, and on or about August 20, 1899, the insured moved out of the house, and rented it to one Schell, who occupied it for a residence until about the 28th of October, 1900, when he moved out of the same, and it was rented to one Havinga, who occupied it for the same purpose until the time of the fire, save that he was temporarily absent therefrom for about one week immediately preceding the burning of the building. During the time of Havinga's absence the key to the house was left with a neighbor, who went to the building almost daily to water some plants which were left there during the temporary absence of the tenant. Plaintiff claims that shortly after he left the property and moved to Minnesota he notified the defendant that he had left the house, and rented the same to Schell, but defendant denies the receipt of any such letter. After living a short time in Minnesota, the plaintiff moved to Doon, Iowa; and while there, and on or about August 23, 1901, he wrote to defendant, suggesting that he be appointed an agent for it at that place. It also appears that he inclosed a premium installment on the policy in that letter. Responding to this, defendant noticed plaintiff's removal from Sibley to Doon, and asked if he wanted his policy transferred. The letter also made certain propositions regarding plaintiff's agency at Doon. This closed the correspondence until after the fire.

Upon the happening of that event plaintiff immediately wired the defendant as follows: " Just received notice that my house at Sibley, covered by policy No. 6,899, was destroyed by fire last night. I am sending policy to Sibley Bank. Please attend to it at once." Receiving no reply, he again, on November 27, 1901, wired the defendant, say-

ing: " I wired you on the 15th, regarding my house burning
at Sibley, policy No. 6,899. Did you get the message?
Answer. D. H." On the next day the plaintiff received
from defendant the following letter: " We went to Sibley,
and found things very unsatisfactory. You had moved your
family. The tenant had not lived in the house for six weeks,
and on that account the fire occurred. Had your family
been in it, it would not have burned." Thereafter, and on
or about December 11, 1901, the Sibley Bank wrote defend-
ant this letter: " Mr. W. W. Nicholas of Doon has forwarded
to us your letter to him written November 27th last. He
asked us to take the matter of the settlement of his loss up
with you and we therefore ask for an explanation of your
letter. You do not say what you are willing to do but sim-
ply say that you found things here unsatisfactory. If you
refuse to pay for the loss under the policy be kind enough
to so state, and oblige." This closed the correspondence
until January 21, 1902, when plaintiff wrote the company
as follows:

Mr. Locke of the Sibley State Bank advises that you have
not yet settled the fire loss there. Kindly advise what you
are doing in regard to the matter and if I can look for a
prompt settlement. This is a very small matter so far as you
are concerned and a bad loss for me and I have no doubt an
old line company would have settled this matter long ago but
the representations of your Sibley agent led me to believe that
in case of misfortune I could not be in better hands than yours
so I trust you will promptly settle this matter and avoid
further delay. In your note of some time ago you mentioned
that the tenant had not lived in the house for six weeks, but
he promptly denies this and says the few days that they were
away his sister-in-law living just across the street took care
of the house and so far as my family were concerned I wrote
you upon leaving Sibley stating that I had rented the place so
I do not understand your assurance that the place wouldn't
have burned had we been living there as I certainly would
never had insured the property if I knew that I would never
have suffered loss and now the misfortune has overtaken us I
trust you will do your duty promptly and avoid putting the

matter in the commissioner's hands. Hoping for a prompt reply and speedy settlement also a continuation of good will on both sides.

This was followed by a letter from plaintiff's attorney, written under date of March 26, 1902, which need not be set out further than to say that it referred to defendant's refusal to pay the loss, and asked for an explanation thereof. To this defendant responded in this wise:

As to your inquiry about loss of W. W. Nicholas we will say we do not know anything definite about it. We have never denied or admitted liability. We have never seen Mr. Nicholas nor has he ever made any loss proof or sworn statement to this Company which sworn statement and loss proof would have set out the occupancy, the other insurance, the mortgagees, liens and other incumbrances, if any, the cause of the fire and the extent of the fire and all other matter material to the policy and damage claimed. We have not looked after it, supposed from information had from another insurance Company interested in the tenant that the claim, if any, had been found to be complicated and therefore was abandoned. Mr. Nicholas has never written this office but one letter, Jan. 21st, 1902, and in that matter set up no claim complying with the policy or statutes of the State. He has never said we owed him one dollar for loss or damage. If Mr. Nicholas had a just claim on this Company, why did he not file his claim as the law requires? He had his policy and it plainly stated Section 9, " Conditions of Insurance " as you may read if you have the policy. We rely on the conditions of the policy and on Sections 1742, 1743, 1744, of the Code in all matters of claim for damages.

After the receipt of the telegram of notification, the president of the defendant company went to Sibley to investigate the loss, but he did not see plaintiff nor the bank which held the policy, and he says that he came to no conclusion as to how the fire occurred. He did, however, call upon the neighbors, and some insurance agents at Sibley, in order to ascertain the cause of the fire, but did not, he says, ascertain either the cause or the extent of the loss. No other proofs of loss were made by the plaintiff.

These are the material facts in the case, and thereupon two questions are raised by the defendant: First, it is insisted that the change of occupancy rendered the policy void; and, second, it is argued that, as plaintiff did not furnish either statutory or contract proofs of loss, he cannot recover. The provision of the policy with reference to occupancy reads in this wise: " If the occupancy of such building be changed or used in any other way than at the time of insuring  *  *  *  so as to make it more hazardous than at the time of insuring,  *  *  *  the insurance shall be void and of no effect, unless the consent of company in writing signed by the Secretary and endorsed upon the policy shall be obtained thereto." In the application for insurance the plaintiff stated and warranted that the building was occupied for a private dwelling only, and in answer to this interrogatory, " By whom occupied applicant or tenant ? " responded, " Applicant." The policy also provided that in case of loss the insured should, within ten days, give written notice to the secretary of the company, and within thirty days deliver a particular account thereof, signed and verified by him. Various other matters were also required to be stated, which need not be more particularly referred to. A by-law provided that proof of loss should be made within sixty days, and it was also provided that the loss should not be payable until the proofs of loss were produced and examined. Sections 1742, 1743, and 1744 of the Code, which supersede these conditions as to notice and proofs of loss, provide that the insured shall within sixty days after the loss give the insurance company notice in writing of such loss, accompanied by an affidavit stating the facts as to how the loss occurred, so far as they are within his knowledge, and the extent of his loss. By these sections it is also provided, in substance, that unless the change in occupancy or use of the property insured made the risk more hazardous, the condition against such change or use is of no effect. The trial court submitted the ques-

1. INCREASE OF HAZARD. finding of jury.

tion of whether or not the change in occupancy or use of the property made the risk more hazardous, and the verdict is a finding that it did not. This conclusion has support in the evidence, and we should not interfere therewith. In so holding we are not to be understood as announcing that there was, as a matter of law, a change in the use or occupancy of the building. That is, to say the least, a doubtful proposition; but, as the case was tried on the theory that the change was within the terms of the policy, we have so treated it here, leaving the increase of hazard thereby as a proposition of fact for a jury.

II. As to proof of loss. The statute was not followed, and, unless there be sufficient evidence of waiver of the terms thereof to take the case to the jury, the judgment must be reversed. Plaintiff was not in Sibley when the loss happened, and, of course, had no personal knowledge as to how the fire occurred. In telegraphing the company he gave all the facts within his knowledge. He said he had notice that his house was destroyed (not damaged) by fire. True, he did not verify this statement, but it evidently contained all the facts within his knowledge. This, of course, defendant knew, for it was advised that he was at Doon when the loss occurred, and that he had not then been at Sibley to investigate the loss. Pursuant to this notice, the president went to Sibley, and investigated the loss, and thereafter wrote the first letter copied in this opinion. That letter makes no reference to insufficiency of the proofs, but notifies plaintiff that the company had made an investigation for itself, and found things unsatisfactory. It then goes on to state that the fire would not have occurred had plaintiff remained in the building, but that it did occur by reason of the change of occupancy and temporary absence of the tenant. This was followed by the letter from the bank, which was written within the sixty days allowed for furnishing proofs of loss, in which an explanation of the company's letter is asked, and a categorical answer as to whether or not

2. WAIVER OF PROOFS OF LOSS.

it refused to pay the loss requested. Thus matters remained until again taken up, after the time for making proofs of loss had expired. That an insurance company may waive proofs of loss, notwithstanding the provisions of the statutes quoted, is too well settled to require the citation of authorities; and the only question for our determination here is, was there sufficient evidence of waiver to take the case to a jury? Waiver is the intentional relinquishment of a known right. Defendant knew its right to have statutory proofs of loss, but it could waive this by such acts or conduct on its part as to justify the conclusion that it was not intending to insist upon full compliance with the statute. It could also waive by refusing to pay the loss. Another well-settled rule of law, which we think applicable to the case, is that, if one makes defective proofs of loss, it is the duty of an insurance company to point out the defects, and, if it fails to do so, but proceeds to act thereon, it will not thereafter be heard to object to the form of proofs. *Pringle v. Insurance Co.,* 107 Iowa, 742. Of course, this rule does not apply, if no proofs are furnished, but if there is a manifest attempt to comply with the law on this subject, it is the duty of the company to point out its objections, in order that the insured may cure the defects. Defendant knew that the insured had no personal knowledge regarding the fire. It also knew that he had given all the facts in his possession. Nothing else was required to make these telegrams complete proofs of loss under the statute, save an affidavit from the assured. If defendant desired this, it should in all fairness have requested it, and, as it did not do so, this defect should be held waived. Moreover, we think, under all the circumstances, a denial of liability on the part of the defendant might well have been found by the jury. The letter from the company is equivocal in character, but, construed by defendant's subsequent conduct, there can be no mistake as to its meaning. Our conclusions on this branch of the case find support in the following cases: *Green v. Ins. Co.,* 84 Iowa, 135 ; *George Dee*

*v. Ins. Co.,* 104 Iowa, 167; *Myers v. Ins. Co.,* 72 Iowa, 176; *Dyer v. Ins. Co.,* 103 Iowa, 524, and numerous other cases cited therein.  See, also, *Carson v. German Insurance Co.,* 62 Iowa, 438; *Smith v. Continental Co.,* 108 Iowa, 382; *Sooroltz v. Ins. Co.,* 109 Iowa, 522;, *Washburn-Halligan Coffee Co. v. Ins. Co.,* 110 Iowa, 423; *Corson v. Ins. Co.,* 113 Iowa, 641; *Ervay v. Ins. Co.,* 119 Iowa, 304, relied upon by defendant, is not in point.  The insurance company did nothing in that case from which a waiver might have been inferred, and the plaintiff did not attempt to comply with the statute.  He simply sent the company a letter from the secretary of another insurance company.

III.    A motion to strike part of defendant's answer was sustained, and of this complaint is made.  The part stricken out simply recited that the tenant, Havinga, after moving 3. Increase of into the property, took out $700 of insurance HAZARD: upon his personal property, which he moved into the house.  This was claimed to be such an increase of hazard as avoided the policy.  As there was no plea of fraud or over insurance of this personal property, it is manifest that it did not increase the hazard.  There is no provision in the policy against the insurance of personal property while in the building insured; and we are not prepared to assent to the doctrine that the mere insurance of personal property within a building increases the hazard, especially where, as here, there is no plea of fraud or over insurance.

We are united in the conclusion that the judgment is right, and it is *affirmed.*

Plaintiff's motion for judgment on the supersedeas bond is *sustained.*