A. P. GRIFFITH, Appellee, v. ANCHOR FIRE INSURANCE COMPANY, Appellant.

**Insurance:** PROOF OF LOSS: WAIVER: EVIDENCE. An insurance company can not take advantage of a failure to furnish proofs of loss within the time provided in the policy, when by its conduct it has induced the insured to believe that it would send an adjuster to settle the loss, and on that account the proofs were not furnished. Evidence reviewed and held to justify a finding that the insurance company waived formal proofs of loss.

**Evidence:** PREJUDICE. Error in the admission of evidence is without prejudice when the action is tried to the court and there is other competent evidence to support the finding.

**Insurance:** AGENCY. An agent of the insured in giving notice and furnishing proofs of loss may also be the agent of the company in conveying to the insured information concerning the risk furnished by the company; and where the company with knowledge of all the facts communicated to the insured through such mutual representative it could not complain of his dual capacity.

*Appeal from Bremer District Court.*—HON. J. F. CLYDE, Judge.

FRIDAY, MARCH 12, 1909.

REHEARING DENIED SATURDAY, JUNE 5, 1909.

ACTION at law upon a policy of fire insurance. The

case was tried to the court, a jury being waived, resulting in a judgment for plaintiff, and defendant appeals.—*Affirmed.*

*A. H. McVey* and *Edmund H. McVey,* for appellant.

*Wm. B. Perrin* and *Sager & Sweet,* for appellee.

DEEMER, J.—On October 22, 1904, defendant issued to plaintiff a policy of insurance in the sum of $1,000 upon his frame dwelling house located in Plainfield, Bremer County. The property insured was totally destroyed by fire on March 30, 1905. On July 12, 1905, plaintiff sent the defendant company, at its home office in Des Moines, proofs of loss duly sworn to, which defendant returned with a denial of liability. On October 2, 1905, plaintiff commenced this suit, and afterwards filed an amended and substituted petition in which he alleged that defendant waived formal proofs of loss, and is estopped from saying that it did not receive the same within the time provided by law, or that they were insufficient, either in form or substance. The defendant answered, claiming that the proofs of loss were not furnished within the time required by the policy and by law, and denied that it waived the same, or is estopped from denying the sufficiency thereof. The case on these issues, and upon some others not necessary to be noticed, resulted in judgment for plaintiff, and defendant appeals.

The errors assigned have reference to rulings on evidence relating to the issue of waiver of formal proofs of loss, and to the sufficiency of the testimony to show such waiver or estoppel. It is admitted by plaintiff that he did not furnish the formal proofs of loss required by the policy or by law within the time required, but he does claim that defendant waived such proofs, and is estopped from pleading

1. INSURANCE: proof of loss: waiver: evidence.

failure to give them. This presents a mixed question of fact and of law, and for its proper determination we must have the testimony relating to the giving of the proofs of loss before us. One C. H. Bauder was defendant's local agent at Nashua, which place is not far from Plainfield. Immediately after the fire occurred plaintiff went to the town of Nashua, notified Bauder thereof, and requested and directed that he (Bauder) inform the defendant of the fire, and that the loss was total. Thereupon Bauder wrote the following letter to the defendant company: "Nashua, Ia., 3—30, 1905. Anchor Fire Insurance Co., Des Moines, Ia. Gentlemen: Policy No. 55110 A. P. Griffith reports a total loss on Bld. & contents. No Ins. on contents. Let me know when the adjuster will be there. I would like to be there with him, and oblige. Yours truly, C. H. Bauder." Defendant responded thereto as follows: "Anchor Fire Insurance Company, Marquardt Block, Fifth and Locust, Des Moines, Iowa, 3—31—1905. Dear Sir: We have received notice of loss under policy No. 55110 and have to say same will receive attention as early as practicable. Griffith—— Yours truly, J. S. Clark, Pres." This information was conveyed to plaintiff. Thereafter, and on April 15, 1905, one Gardner, defendant's adjuster, went to Plainfield to investigate and adjust the loss. Plaintiff was not at home, and did not see this adjuster. Thereafter Bauder wrote the following letter to defendant: "Nashua, Ia., 4—29, 1905. Anchor Fire Insurance Company, Des Moines, Ia.—Gentlemen: Mr. Griffith was just in the office, he is just home from Boston. It seems you had a man to look up his loss while he was away. He said he wished you would let him know when to meet you in Plainfield to settle the loss he had. Please let me know and oblige, Yours truly, C. H. Bauder." On May 6, 1905, Bauder again wrote: "Nashua, Iowa, May 6, 1905. Anchor Fire Insurance Company, Des Moines, Ia.—Gentlemen: Policy No. 55110 A. P. Griffith, Please let me

know at once in regard to the loss and what you expect to do.   Mr. Griffith will be home for a few days.   Please let me know at once and oblige, Yours truly, C. H. Bauder." This was followed by a letter reading in this wise: "Anchor Fire Insurance Company, Des Moines, Iowa, May 8, 1905.   C. H. Bauder, Nashua, Iowa—My Dear Sir: Your kind favors of Apr. 29th and May 6th have been received.   I returned to the office last night after a ten days' trip and hence the delay in answering. I have engagements for three mercantile losses in western part of the state which will probably take me at least ten days or two weeks.   These losses are covered by other insurance companies and the other adjusters have made arrangements for me to be there with them, so it will be impossible for me to give your matter any attention for the present.   Some time since, I was up to Plainfield and as Mr. Griffith was not in town, I took the first train out and did nothing in regard to this loss.   I will advise you after these mercantile losses when it will be possible for me to meet you.   I wish to thank you for your courtesy and assure you that I appreciate the same.   I am, Very truly yours, J. G. Gardner, Vice President."   On May 16th, Bauder wrote as follows: "C. H. Bauder, Real Estate Dealer, Notary Public and Insurance.   Will Trade Land for Merchandise or Merchandise for Land.   Nashua, Iowa, May 16, 1905.   Dear Sir: Inclosed please find letter from the Anchor Insurance Company in regard to your loss.   I will let you know as soon as I hear from them again. Trusting everything will be satisfactory, I remain, Yours truly, C. H. Bauder."   The testimony shows that plaintiff was also advised of the contents of the former letters. On June 8, 1905, Bauder again wrote the defendant as follows: "Anchor Fire Insurance Company, Des Moines, Iowa.   Nashua, Iowa, 6—8, 1905.   Mr. J. G. Gardner, Des Moines, Iowa—Dear Sir: Yours of the 23d of May received.   I will be at home the most of the time next

week. Wish you would let me know what day you can
be here so we can go and settle the Griffith loss at Plain-
field. He is getting anxious. You had better try and
get it fixed at once if possible. Yours truly, [Signed] C.
H. Bauder." And in response to this came this letter
from the defendant company: "Anchor Fire Insurance
Company, Des Moines, Iowa, June 10, 1905. Mr. C. H.
Bauder, Nashua, Ia.—Dear Sir: Your favor of June
8th received to-day. You request me to visit you for the
purpose of settling the Griffith loss at Plainfield. Mr.
Griffith for some reason, has failed to give this loss any
attention. He has not made proof of loss in accordance
with his policy or the statute. If this is all therefore,
that you desire me to visit you concerning, I can not come,
as we do not concede any liability to Mr. Griffith. When I
am next in your locality, however, I will be glad to call
upon you and talk over any other matters aside from this
Griffith case which you may desire to refer to me. With
kindest regards personally, yours very truly, J. G. Gard-
ner, Vice President." It will be noticed that this letter
was written after the time for making formal proofs of
loss had expired. This closed the correspondence, save
that after plaintiff furnished formal proofs of loss, de-
fendant wrote the following: "Anchor Fire Insurance Co.
Des Moines, Iowa, July 15, 1905. Hon. Wm. B. Perrin,
Nashua, Iowa—Dear Sir: We are in receipt of your favor
of the 13th inst., inclosing by registered letters alleged
notice of loss on claim of A. P. Griffith, No. 55110. As
there is no liability under this policy we return the paper
herewith. Yours very truly, [Signed] J. S. Clark."

Plaintiff testified that he heard of the adjuster's visit to
the premises, and was informed that he would be back
again. He further testified that he furnished all the in-
formation, demanded by the company in its correspondence
with Bauder, with which he was familiar; and did not
know, believe, or understand that anything further was re-

quired of him. And he also said that he relied upon Bauder's giving the necessary information. All the letters written by Bauder to the company were at plaintiff's suggestion, if not by his direction. In every conversation plaintiff had with Bauder, he (plaintiff) requested Bauder to notify the defendant of the loss, and insisted upon their investigating and paying the same. The defendant at no time indicated it was dissatisfied with the information it had received, or was receiving, regarding plaintiff's loss until after the time for filing formal proofs had expired. On the contrary, it seemed to treat the information it was receiving as sufficient, and was making promises to investigate the same. It did send an adjuster pursuant to the notice, of which plaintiff was advised, and after that it made no objection to the information it was receiving, or had received, regarding the loss. It also promised to have an adjuster meet Bauder regarding the loss suffered by plaintiff. The defendant knew from the correspondence that its agent was acting for plaintiff and directing him as to how to proceed, and by its conduct induced the plaintiff not to make further efforts in supplying proofs, or to furnish formal proofs, of the loss. As said in *Ervay v. Insurance Co.*, 119 Iowa, 304: "The doctrine of waiver rests upon estoppel. That is, when the plaintiff has been misled into thinking that nothing further will be required of him, and has on that account failed to take further steps which he might have taken, then the company can not take advantage of such failure induced by it, or its authorized agent acting for it in the matter, for the purpose of defeating its liability under the policy." Again we have said: "Proofs of loss required by the policy of insurance may be waived by a shuffling, tricky, or evasive course of conduct on the part of the company, amounting neither to an absolute denial, nor to the distinct recognition of its liability, yet such as to lead a reasonably prudent man to believe that proofs of loss are not to be required."

*Nicholas v. Insurance Co.,* 125 Iowa, 262; *Pringle v. Des Moines Co.,* 107 Iowa, 748; *Green v. Insurance Co.,* 84 Iowa, 135.

There can be no doubt that defendant accepted the letters coming from Bauder as communications from the assured. Defendant was advised that plaintiff was calling upon it for information as to what he should do; and, instead of insisting upon formal proofs, it was promising, both directly and indirectly, to send adjusters to investigate the same. We think the facts recited were sufficient to justify the trial court in finding a waiver of formal proofs. *Harris v. Insurance Co.,* 85 Iowa, 238; *Nicholas v. Insurance Co.,* 125 Iowa, 262. *Ervay v. Fire Ins. Ass'n,* 119 Iowa, 304, relied upon by defendant, is not in point; for in that case defendant did nothing to indicate that formal proofs of loss were dispensed with.

Errors are assigned on the admission and rejection of testimony showing the transactions between plaintiff and Bauder and Bauder and the defendant company. Generally these rulings are correct. If there be any error, it was without prejudice, for the case was tried to the court, and we find ample competent testimony to support the finding of waiver by the defendant company.

2. EVIDENCE: prejudice.

It is insisted that Bauder could not act as agent for both plaintiff and defendant. This rule has no application to the case. Bauder may have been plaintiff's agent in giving notice and furnishing the showing required by the defendant, and defendant's agent in giving plaintiff the information furnished him by the company. There is no rule of agency which would forbid this. Defendant was informed through the correspondence it had with Bauder that he (Bauder) was attempting to act for plaintiff, and it manifestly made Bauder the medium, if not the agent, whereby to convey information to plaintiff. *Morey v. Laird,* 108 Iowa, 670, relied upon by appellant,

3. INSURANCE: agency.

has no application to the case before us.   Even if Bauder were serving two masters, it was with the intelligent assent of both.   The very first letter sent by Bauder to the defendant notified it that he was acting for plaintiff, and not as defendant's agent in the matter, except in so far as it chose to make him the instrument whereby to inform plaintiff of its intention and desires.   That it wrote the letters to Bauder intending that the information therein contained should be conveyed to plaintiff, there can be no doubt.

No prejudicial error appears, and the judgment must be, and it is, *affirmed.*