CHARLES CONAWAY, RESPONDENT, v. COMMONWEALTH CASUALTY COMPANY, APPELLANT.—37 S. W. (2d) 493.

In the Springfield Court of Appeals. Opinion filed April 3, 1931.

*O. J. Stewart* and *K. D. Norvell* for appellant.

*Earl E. Roberts* for respondent.

COX, P. J.—Action upon a sick and accident insurance policy. Plaintiff recovered $300 on the policy and also damages in the sum of $80 for vexatious delay under the statute providing for recovery of ten per cent and attorneys' fees in certain cases. Defendant appealed.

The provision in the policy upon which this action is based is as follows: "If the insured shall be continuously confined within the house, not leaving it at any time or for any purpose whatsoever and regularly visited therein at least once in every seven days by a licensed physician and be wholly prevented from transacting any and every kind of business solely by . : . appendicitis, initial attack and only when operation for removal of appendix is performed . . . not including their complications and consequences, provided that this insurance shall have been in continuous force for thirty days from its date prior to the contraction of the disease by the insured the company will pay for such confinement after the first seven days and not exceeding fifteen weeks a weekly indemnity of twenty-five dollars ($25)."

In the assignment of errors complaint is made of the court's refusal to sustain a demurrer to the evidence offered at the close of

plaintiff's case and renewed at the close of the whole case. That the court erred in giving instructions "A", "B", and "C" for plaintiff. That the damages awarded plaintiff are excessive. That there is no proof to justify a verdict for vexatious delay against defendant.

Plaintiff testified that he was attacked with appendicitis on February 13, 1929, while he was in St. Louis and he consulted Dr. Matlock who took him to a hospital and on the 14th day of February, 1929, removed his appendix. If that testimony were true, then there could be no doubt as to his attack being an initial attack of appendicitis and that brought him squarely within the terms of the policy as to the disease for which the company would be liable. He remained in the hospital until February 26th, which was thirteen days from the day he entered. He then left the hospital and went to the home of an uncle in St. Louis where he remained four days. He then went to Salem, Missouri, where he could be close to a doctor so he could get some relief from his suffering. His father lived near Salem and he seems to have made his home there and testified that for four or five months he was in bed there except when they would take him in an automobile to the doctor's office in Salem. That he was confined to the house practically all the time from about the 17th of March until the latter part of July. He was, of course, confined in the house while in the hospital from February 13th to February 26th and he testified that he was in fact in bed and around in the house from that time until the latter part of July. Then the following occurred: "Q. Well, did the doctor call on you during that time? A. Yes. Q. Every week? A. All the time, he did not call on me; they would take me to him in the car. Q. This policy provides that the insured 'shall be continuously confined within the house not leaving it at any time for any purpose and regularly visited at least once in every seven days by a licensed physician and be wholly prevented from transacting any and every kind of business.' Now, did the doctor come out to see you at your father's once a week during that two or three months or whatever it was that you were out there? A. He did not make those trips that often—no—but absolutely during the time I never was able to transact any business of any kind whatever."

On cross-examination he testified that he had some stomach trouble in November, 1928, but said nothing to indicate that he was then afflicted with appendicitis. He stated, also, on cross-examination that his first real attack of appendicitis was on the 11th day of February, 1929. He identified his application for insurance, dated July 25, 1927, in which it was stated that he was then in a sound condition. Also his proof of sickness in which, in answer to a question, it was stated that his first attack of the disease for which he was later operated upon occurred about one and a half years prior

to the operation. On re-direct examination, he testified that he did not fill in the answers to questions in the proof of sickness and that he did not tell the party who did fill it in that his first attack of appendicitis had occurred one and a half years prior to the operation. He also testified that a doctor called on him each week from the time he went into the hospital until May 15, 1929.

Defendant's evidence is to the effect that in the proof of sickness the party who filled out the blank for plaintiff wrote in the answers to questions just as plaintiff gave them. The foregoing is a substantial statement, in brief, of all the testimony.

In our opinion the evidence was sufficient to take the case to the jury and the demurrer to the evidence was properly overruled.

Objections to plaintiff's instructions are presented in the motion for new trial and in the assignment of errors but in neither the brief nor the printed argument are the instructions mentioned and the specific errors therein of which complaint is made are not mentioned. We have, however, carefully examined them and do not find any reversible error therein.

The assignment that the damages awarded in the amount recovered on the policy, to-wit, $300, is grossly excessive, we do not think tenable. This claim of excessive damages is based on the contention that plaintiff's evidence does not show confinement to the house and being visited at least once a week by a licensed physician for more than four weeks while the award was for twelve weeks. We think a review of the testimony we have set out when viewed in the light of the authorities in this State will warrant a recovery for the twelve weeks for which the jury found plaintiff was entitled to compensation under the policy. These provisions in sick and accident insurance policies are always rather harsh and the courts are disposed to construe them liberally in favor of the insured in order to accomplish the real purpose for which the policy was taken out by the insured. [Hays v. General Assembly American Benevolent Association, 127 Mo. App. 195, 104 S. W. 1141; James v. United States Casualty Company, 113 Mo. App. 622, 88 S. W. 125.]

In respondent's application for insurance, which was dated July 25, 1927, it is stated in answer to a question that he was then in a sound condition. It is now contended that this answer was not true and constituted a fraud upon the company and should avoid the policy. This point must be ruled against appellant for two reasons: First, for the want of sufficient pleading. The answer sets up the question and answer as follows: "Are you whole and in sound condition," to which plaintiff answered "Yes." The answer then alleges that this representation was not true but does not allege that the policy would not have been issued had the truth been known to the company at the time. This latter allegation seems to be necessary in order to permit the company to avoid the policy for the al-

leged fraud. [Christian v. Insurance Co., 143 Mo. 460, 45 S. W. 268.]

Second: Fraud in procuring the policy was not submitted to the jury and no instruction was asked on that theory of the defense and no mention of fraud in procuring the policy was made in the motion for new trial nor in the appellant's assignment of errors. In that state of the record the only purpose for which that question can be considered in this court is in determining whether a demurrer to the evidence should be sustained and in order for appellant to profit by that point here, it would have to appear so clearly from plaintiff's evidence that the policy was procured by fraud as to make it the duty of the trial court to sustain the demurrer to the evidence. That showing is not made in this case, so, even if fraud had been properly pleaded, it could avail appellant nothing in this case.

Lastly, it is contended that the evidence will not sustain a finding of vexatious delay and warrant the assessment of the statutory damages for such delay. In this contention we agree with appellant. In the proof of sickness signed by plaintiff there appeared an answer to a question which made it appear that plaintiff was first attacked with appendicitis one and a half years before the operation. If that were true, the defendant would not be liable. for the policy only covered sickness resulting from an initial attack of appendicitis and if the disease had affected plaintiff for one and a half years prior to the operation, it would reasonably be supposed to have become chronic and the operation would not have been for an initial attack of the disease. The plaintiff denied having made that statement and on that testimony recovered and there is nothing to indicate that the company knew that the plaintiff had not made the statement and with that statement in the proof of sickness furnished the company by plaintiff, it cannot be said that defendant acted in bad faith in trying to build a defense on that theory. We are of the opinion that the question of vexatious delay should not have been submitted to the jury.

If plaintiff will, within ten days, remit $80 assessed by the jury for vexatious delay, the judgment will be affirmed for $300; otherwise it will be reversed and remanded. *Bailey* and *Smith, JJ.,* concur.