CHARLES H. SMITH, Appellant, v. PENN MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA, Appellee.

No. 46080.

December 15, 1942.

Rehearing Denied April 9, 1943.

J. P. Murphy, of Sumner, McCoy & Beecher, of Waterloo, and Sweet & Sager, of Waverly, for appellant.

Henry & Henry, of Des Moines, and Hagemann, Hagemann & Hagemann, of Waverly, for appellee.

Oliver, J.—Some years prior to 1929, appellee had issued to appellant certain policies of life insurance, aggregating $25,000. On March 11, 1929, supplemental agreements for disability benefits were added to said policies. Said supplemental agreements provide for waiver of premiums and payment of monthly income, aggregating $250 for each completed month of insured's total and permanent disability, as therein defined as follows:

" 'Total and Permanent Disability' Defined. Disability is total when the insured is prevented by bodily injury or disease from performing any work or from engaging in any occupation whatever for remuneration or profit.

"Total disability shall be deemed to be permanent if it has

been continuous for not less than three consecutive months immediately preceding the receipt of due proof.''

A clause entitled ''Recovery of Disability'' provides in part that if it appears at any time that the insured has become able to engage in any work or in any occupation whatever for remuneration or profit, all disability benefits (except those for the loss of sight or certain members) shall thereupon cease.

The petition alleges that about April 24, 1929, appellant became totally and permanently disabled as a result of disease and has since been at all times and is now totally and permanently disabled as defined by said policies; that on April 24, 1929, appellee commenced paying to appellant the disability benefit of $250 per month and continued said payment until the monthly payment of September 24, 1940, was due; that since August 24, 1940, appellee has denied liability and refused to make said payments. Judgment is prayed for the twelve monthly payments alleged to be due from September 24, 1940, to and including August 24, 1941.

The answer admits the policies and supplemental agreements, admits appellee made payments of disability benefits from April 24, 1929, to and including August 24, 1940, admits it thereafter refused to pay anything, and denies all other allegations of the petition. In the trial it was stipulated that proofs had been furnished by appellant to appellee and that there was no issue raised on the question of the sufficiency of the proof. Appellee also admitted that premiums due prior to April 24, 1929, had been paid.

I. Instruction 2 states, with reference to the definition of total disability in the supplemental agreements:

''* * * that the term 'prevented from performing any work or engaging in any occupation whatever for remuneration or profit' used therein does not mean absolute helplessness on the part of the party insured, but means the inability of the party insured to do all the substantial and material acts necessary to the prosecution of the business or occupation of the party insured, or some other business or occupation which he might enter in a customary and usual manner.''

Substantially the same language appears in instruction 3, dealing with the burden of proof.

. Said definition adopts the rule enunciated in Hoover v. Mutual Trust L. Ins. Co., 225 Iowa 1034, 1040, 282 N. W. 781, 784, in which the occupation of insured had been similar to that of appellant. It is a correct statement of the law. We do not agree with appellant's contention that the instructions are meaningless and confusing or inadequate. In the absence of request for amplification or further definition said statements were sufficient. Richards v. Crosby, 179 Iowa 1355, 162 N. W. 609. What amplification or further definition, if any, should have been included in the charge to the jury, if specially requested, need not be determined.

■ II. Appellant contends he was entitled to judgment as a matter of law; that the court erred in submitting the case to the jury; and that the verdict is contrary to the evidence.

Appellant was born in 1888. He was a farmer and cattle breeder and for years prior to 1929 had farmed and carried on a purebred-cattle-breeding business near Tripoli, Iowa. He milked cows, cared for livestock, plowed, filled silos, handled bales of hay, sacks of feed, and large cans of cream, pitched hay and manure, drove tractors and automobiles, bought and sold livestock in the surrounding territory, and performed other work usually incident to the occupation of a farmer and breeder.

He testified that in April 1929, he suffered severe rectal pain with bleeding. Dr. Kern testified appellant, in 1929, had an "ulcerated colitis." Appellant testified that in 1929 or 1930 he was operated upon for what he says was amoebic ulcer and was given directions for treating himself with ointment, suppositories, and irrigation, and that since then he had suffered persistent intense rectal pain. Concerning appellant's rectal ailments his wife testified only that he underwent the operation in 1929. There was also some evidence (apparently hearsay) of a rectal operation in 1935.

Dr. Amlie first examined and treated appellant in 1933, but did not learn of his rectal condition until 1934. The nature of this condition was not disclosed by the doctor, except that he said he examined the rectum in 1936 and 1937 and found it extremely tender. He said appellant complained about it a good

deal the first few years. Other than as above noted, none of the various lay and professional witnesses who testified in appellant's behalf mentioned his rectal ailments.

Dr. Rothe testified that when appellant was examined for appellee in 1936, and again in 1941, he would not permit a rectal examination. This doctor also testified:

''Examined external orifice of rectum in August 1940, found small hemorrhoid and no other abnormal condition.''

Appellant asserts the evidence of his rectal ailments was wholly undisputed and also that said ailments formed the basis of the disability payments received by appellant from appellee for eleven years and four months. We do not agree with either of these conclusions. Whatever may have been the character and effect of these rectal ailments during the first few years, there is no reference to them subsequent to 1937 by any of appellant's medical witnesses. On the other hand, the testimony of Dr. Rothe may, we believe, be fairly interpreted as indicating that in 1940 said ailments were not serious or disabling. It is clear that total disability from these ailments in 1940 and 1941 was not established as a matter of law.

The other phase of the testimony concerns heart ailments. Appellant and various lay witnesses testify to numerous severe heart attacks at frequent intervals between 1932 and the trial in September 1941. Dr. Amlie testified to a history of coronary thrombosis or coronary occlusion in 1932 or 1933, and that he found appellant's heart enormously enlarged; that in 1935 appellant had some severe attacks of angina pectoris; that this condition continued and that the doctor attended him for anginal attacks in 1939 and September 1941. Dr. Gottshall testified to another anginal attack in January 1941. Dr. Whitmire testified to an anginal attack in March 1941, and Dr. Jay to an attack of some kind of coronary heart disease in August 1941. According to the testimony of various medical witnesses for appellant, he was totally disabled by his ailments.

The only witnesses for appellee were two heart specialists whose examinations of appellant included electrocardiogram, blood count, and fluoroscope. Dr. Rothe made examinations in

1935, 1939, 1940, and 1941. He testified that on each occasion he found normal heart, normal blood pressure, no evidence of heart disease from physical examination, normal electrocardiograms, nothing sufficient to prevent following a gainful occupation. He also said that after six or seven years of heart attacks accompanied by angina pectoris the heart would be definitely enlarged and the electrocardiogram would definitely show myocardial damage. He reached the conclusion that the attacks were hysterical and that appellant had a perfectly normal heart in every way. He testified:

"As far as his heart is concerned, yes, as far as his physical condition is concerned he is in perfect health, able to do farm work up to what his physique could stand, not having been in condition."

The foregoing reference to the record is necessarily fragmentary. However, it shows the conflict in the evidence upon the factual issue involved in the case. The entire record leads us to conclude the question of appellant's total disability was for the jury and that there was substantial evidence to support the verdict.

III. Instruction 3 states that the burden is upon appellant to establish by a preponderance of the evidence "that at all times since August 24th, 1940, he has been so disabled as to be unable to do all the substantial and material acts necessary to the prosecution of his business or occupation or some other business or occupation which he might have entered in a customary and usual manner," and that if appellant has so established said proposition the verdict should be for him.

Appellant complains the instruction should have required "appellee to establish * * * that the total and permanent disability which had existed prior to August 24, 1940, had ceased to exist," and should have stated "that the total and permanent disability of the appellant was presumed to continue until the appellee established by a preponderance of the evidence that the total and permanent disability had ceased to exist."

This complaint overlooks the fact that the instruction did not require appellant to prove his disability was permanent. The jury was charged that appellant should prevail if he established

the one proposition, to wit, total disability since August 24, 1940. This was equivalent to an instruction that, under the record, the establishment of total disability for the period in question would establish as a matter of law that such disability was permanent for said period. It took from the jury the question of permanency.

The supplemental agreements provide:

"Total disability shall be deemed to be permanent if it has been continuous for not less than three consecutive months immediately preceding the receipt of due proof."

Appellant asserts that, in view of this provision, appellee, having paid total disability benefits for eleven years, should have been required to affirmatively establish that appellant's total disability had thereafter terminated. Cases from other jurisdictions are cited. Some of these appear to support appellant's contention. However, this court considered the effect of a similar provision in Graham v. Equitable Life Assur. Soc., 221 Iowa 748, 753, 266 N. W. 820, 822, and stated with reference thereto:

"* * * the clause * * * is wholly an evidentiary matter. It was not intended to create or enlarge liability, and was put in the policy only for the benefit of the claimant, to reduce the difficulties of proving the permanency of the disability * * *."

It was this clause that, under the record in the case at bar, justified the instruction that appellant was required to establish only total disability during the period in question to entitle him to a verdict. We do not agree with the contention that by reason of appellee's payments of disability benefits for a previous term it was required by said clause to establish that total disability had terminated.

Appellant also asserts the conduct of appellee in accepting proofs and paying disability benefits for eleven years and four months establishes that appellant was totally and permanently disabled during said period, and that said total disability having been thus shown to exist, the continuation of that condition will be presumed until the contrary is established.

Eller v. Paul Revere L. Ins. Co., 228 Iowa 1247, 1259, 291 N. W. 866, 872, was an accident insurance case, in which the com-

pany had refused to continue payments of indemnity. The insured contended the company was estopped to deny his total and continuous disability during the time it had paid indemnity. The court there said:

"The appellee never at any time admitted that appellant was ever totally disabled at any time, and the fact that it paid indemnity was not an express or inferential admission of such disability."

So, in the case at bar, the acceptance of proofs and payment of disability benefits during the former period were insufficient to establish appellant's total disability during said former period. Hence, there was no foundation for any presumption of fact based thereon. The instruction properly placed the burden of proof upon appellant.

IV. Appellant assigns as error that part of instruction 3 (set out in the preceding division) which required him to prove total and permanent disability since August 24, 1940. The petition prayed recovery on account of such disability for the period between August 24, 1940, and August 24, 1941. The trial of the case began September 29, 1941, and ended several days thereafter. Appellant's complaint is that the instruction placed upon him an undue burden in requiring him to show total disability after August 24, 1941, and to and including the time of trial. As heretofore noted, the instruction did not require appellant to prove his alleged total disability was permanent.

It may be conceded that it would have been sufficient for appellant to have shown total disability for the period from August 24, 1940, and August 24, 1941, and that under the stipulations, evidence, and provisions of the supplemental agreements, such disability would have been deemed permanent for said period. However, both parties assumed there was no change in appellant's condition after August 24, 1941. Various witnesses for the respective parties were interrogated concerning and testified to his condition as of the time they testified and in the present tense. The evidence bearing upon the proposition in controversy is the same whether considered with reference to the year ending August 24, 1941, or with reference to the slightly longer period ending with the trial.

Although the instruction may have been technically imperfect in the questioned particular, it adopted the theory upon which the case was tried. Furthermore, there was absence of prejudice to appellant. Hence, it did not constitute reversible error.

V. In their opening argument counsel for appellant stated to the jury that if appellee waived its argument, such action on its part would amount to an admission that appellant's position in the case was correct and that it would amount to "throwing up the sponge." Thereafter counsel for appellee waived argument.

Instruction 6½ referred to said statement and advised the jury that "either party to an action has an absolute right to waive his or its argument, and that the waiver by the defendant in this case of its argument is not a concession by the defendant that the plaintiff has established his case."

Appellant assigns error to said instruction. The instruction is a correct statement of the law. In view of the record it was not an abuse of discretion to give the same.

VI. Appellant also complains that in connection with his testimony that about 1930 he was operated upon for amoebic ulcer he was not permitted to testify that a part of his intestine above the rectum was removed and, that the same was in his knowledge. The objection was that his testimony would be hearsay testimony and also that the witness was incompetent.

The ruling was not erroneous. Presumably, a lay witness would not be qualified to give such testimony. Under the circumstances appellant's offer to testify merely "that the same was in his knowledge" was insufficient to show his qualification. —Affirmed.

WENNERSTRUM, C. J., and MILLER, MITCHELL, GARFIELD, STIGER, BLISS, and HALE, JJ., concur.

SAGER, J., takes no part.