HAROLD R. SCHOEMAN, Appellee, v. LOYAL PROTECTIVE LIFE INSURANCE COMPANY OF MASSACHUSETTS, Appellant.

No. 47176.

(Reported in 32 N. W. 2d 212)

MAY 4, 1948.

Kepford, Heath & Kepford, of Waterloo, for appellant.

Reed & Beers, of Waterloo, for appellee.

OLIVER, J.—In 1943 defendant issued plaintiff its insurance policy providing for payment at $110 per month for such time, not exceeding twelve months, as he should be totally disabled by sickness. Alleging a heart attack suffered about July 6, 1944, had caused such disability for more than twelve months, plaintiff brought suit upon the policy. Trial to a jury resulted in judgment for plaintiff for $1,320.44, with interest, and this appeal. All the errors assigned are based upon the overruling of defendant's motion for directed verdict. No error

is assigned to the instructions. Nor are they set out in the record.

I. Defendant contends there was no substantial evidence plaintiff's sickness resulted in his continuous disability.

Plaintiff was thirty-nine years of age. Aside from some heavy labor in a machine shop, farming had been his only occupation. He had helped in the operation of the farm upon which he had been reared and had attended college for one year. About 1927 he took a course in a business college but never did any work along that line except keeping records on the farm. He testified he was not trained nor qualified to do any work other than farming. For nine years he had grown produce and raised livestock and poultry on a small farm. Thereafter he operated a 280-acre dairy and stock farm near Cedar Falls for some years. He employed one farm laborer. He kept 179 acres in crop, about 300 hogs, 125 cattle of which 30 or 35 were milch cows, some sheep and poultry. This required regular manual labor by the two men. On account of the war he was unable to hire a farm hand in June 1944. He became sick. "I think I just overdone, and by the end of June * * * I couldn't hardly walk." From July 6, 1944, he was confined to his bed about two weeks and in the house about six weeks. He had a "mitral lesion in his heart, and a damaged myocardium, a damaged muscle of the heart." By September he was able to walk about the yard with the aid of two canes. Throughout the ensuing year his condition gradually improved but he was unable to work. His wife managed and operated the farm and supervised the farm laborers with some suggestions and assistance from him. A doctor reported he would never again be able to do farm work.

Defendant concedes plaintiff was unable to do any appreciable amount of physical labor in connection with his farm work but contends there was no evidence that plaintiff was unable to enter into some other business. However, there was substantial evidence tending to show that, aside from other types of work involving heavy physical labor, farming was the only occupation for which plaintiff was fitted.

We conclude the evidence of plaintiff's total disability

for the twelve-month period following July 6, 1944, was sufficient to require submission to the jury of that question.

▇▇▇ In Hoover v. Mutual Tr. L. Ins. Co., 225 Iowa 1034, 1040, 282 N. W. 781, 784, the insured was unable to perform labor on his farm but was still able to direct the farming operations of his hired men. The practical effect of the disability in that case was substantially the same as in the case at bar. The decision points out that a jury could well find a person in such physical condition could not secure a position as a farm operator for others, and holds whether he was totally disabled was a jury question. It states:

"The liberal rule is that the 'total disability' contemplated by a life insurance policy of this character does not mean as its literal construction would require—a state of absolute helplessness; on the contrary, the disability contemplated means, under the liberal rule, inability to do all the substantial and material acts necessary to the prosecution of the business or occupation of the assured or some other business or occupation which he might enter in a customary and usual manner."

The decision cites among others, Prusiner v. Massachusetts Bonding & Ins. Co., 221 Iowa 572, 265 N. W. 919; Wood v. Federal L. Ins. Co., 224 Iowa 179, 277 N. W. 241; Kurth v. Continental L. Ins. Co., 211 Iowa 736, 234 N. W. 201. In turn the rule of the Hoover case, supra, was approved in Eller v. Preferred Acc. Ins. Co., 226 Iowa 474, 477, 284 N. W. 406, and Smith v. Penn Mut. L. Ins. Co., 233 Iowa 340, 7 N. W. 2d 41. The definition of total disability recited in the policy is substantially the same as that enunciated in the Hoover case. We reaffirm the rule of that decision.

II. Defendant asserts the evidence conclusively establishes plaintiff's failure to furnish proofs of loss and that the court should have sustained that ground of the motion for directed verdict. Defendant concedes it received written notice of plaintiff's disability within the sixty days provided by the policy. Hence failure to give notice is not here in question.

August 31, 1944, defendant received proofs of disability executed by plaintiff on one of defendant's printed forms, with a report by his attending physician, who stated he was a

chiropractor. Defendant did not make the payment called for by the proofs.

In December 1944 defendant was again furnished formal proofs of loss showing continued total disability. Therein plaintiff applied for payment on account.

December 29th defendant sent plaintiff its check for $123.33 *in full payment* of his claim, stating the policy did not cover partial loss of. time, that the proofs of loss showed plaintiff was totally disabled from July 6th to the middle of August and that the disability rate was $100 per month (instead of the $110 provided by the policy). Plaintiff refused the check. January 3, 1945, defendant's agent wrote defendant plaintiff was still totally disabled and "there has been a big mistake someplace."

January 10th defendant replied it could not "throw the matter open completely" and instructed the agent to offer payment for two additional months in full settlement. January 24th defendant wrote the agent that plaintiff would not be totally disabled if he was able to do some supervising, that the $123.33 check covered everything owed plaintiff, that he should contact and notify plaintiff the offer to pay for two additional months would be withdrawn in three weeks.

February 20th defendant was furnished a report by R. S. Gerard, M. D., dated January 26th, which recited plaintiff had a rheumatic heart with a systolic murmur and that the electrocardiograph showed some myocardial damage. The agent wrote defendant that if it would send plaintiff the check for three months disability, "last fall", he would try to get plaintiff to take that in settlement up to January 26th, but suggested the case be reopened as of January 26th. March 1st defendant wrote the agent stating "a new claim is to be entered as of January 26." The letter stated "we haven't contended at all that he was able to do any appreciable amount of physical labor in connection with his farm work", however, plaintiff would not be totally disabled while doing lighter work, and defendant would not "throw the entire matter open" on the theory plaintiff was totally disabled. The agent was instructed to tell plaintiff to write defendant "fully about what he is doing to get a job."

March 4th plaintiff wrote defendant expressing disappointment that he had not received his monthly disability checks and stating "I have been unable to work since July 6, 1944 and the doctor tells me I may never be able to work again"; that plaintiff would welcome any examination or investigation defendant would like to make and hoped he could start receiving checks soon.

May 17th defendant wrote plaintiff enclosing preliminary claim forms for the period of disability beginning January 26, 1945. May 23d plaintiff wrote defendant he saw no sense in starting another claim in January but would do so if paid up till then. He asked defendant, "Frankly why have you questioned my disability claim?" Apparently this question was not answered.

June 4th plaintiff again furnished defendant formal proofs of loss. July 12, 1945, the agent reported plaintiff had complained his letters were unanswered and was becoming impatient to get the matter settled. Late in July defendant advised plaintiff it would have a claim adjuster call upon him. A month later the agent reported plaintiff complained of defendant's failure to do this, that plaintiff was "very put out", insisted he was entitled to a full year's disability benefits and threatened to consult an attorney. September 7, 1945, defendant wrote plaintiff, stating no information had been submitted indicating he had been totally disabled for more than a short time and offering to pay plaintiff $30 in addition to $123.33, in final payment of his claim.

The policy provides for such proofs of sickness as defendant may reasonably require, including proofs after the termination of the disability period. The function of proofs of loss is to advise the insurer of the essential facts upon which its liability depends. Generally speaking, provisions for the furnishing of such proofs will be liberally construed in favor of the insured. 29 Am. Jur., Insurance, section 1120. The insurer may not arbitrarily demand any particular form of proofs and is not the sole judge of their sufficiency. Robertson v. Mutual L. Ins. Co., 232 Iowa 743, 748, 6 N. W. 2d 153; Garden v. New England Mut. L. Ins. Co., 218 Iowa 1094, 1098, 254

N. W. 287; Forman v. New York L. Ins. Co., 267 Mich. 426, 255 N. W. 222; annotation in 109 A. L. R. 825.

In the case at bar proofs of loss made upon defendant's forms were furnished defendant in August and December 1944 and in June 1945. These were supplemented by the report of a doctor, and also by letters between plaintiff and defendant and negotiations between defendant's agent and plaintiff, both before and after the termination of the period for which disability was claimed. The evidence that proofs of loss were furnished was ample to warrant the overruling of the ground of the motion for directed verdict based upon their asserted insufficiency.

Moreover, the overruling of the motion was proper for another reason. An insurer's denial of liability on grounds other than failure to furnish proofs of loss operates as a waiver of the right to require proofs. Jones v. Automotive Ins. Co., 197 Iowa 513, 197 N. W. 448; Robertson v. Mutual L. Ins. Co., 232 Iowa 743, 751, 6 N. W. 2d 153; Nicholas v. Iowa Merchants Mut. Ins. Co., 125 Iowa 262, 101 N. W. 115; Wood v. Federal L. Ins. Co., 224 Iowa 179, 191, 277 N. W. 241. Shuffling, tricky or evasive conduct of the insurer amounting neither to an absolute denial nor recognition of liability may also constitute a waiver. Teasdale v. City of New York Ins. Co., 163 Iowa 596, 601, 145 N. W. 284, Ann. Cas. 1916A, 591; Havirland v. Farmers Ins. Co., 204 Iowa 335, 213 N. W. 762; Griffith v. Anchor Fire Ins. Co., 143 Iowa 88, 120 N. W. 90. Likewise a waiver of proofs may result from an attempt to negotiate a settlement. Lee v. Farmers Mutual Hail Ins. Assn., 214 Iowa 932, 241 N. W. 403. Waiver may result also from insurer's failure to object to the sufficiency of the proofs. Green v. Des Moines Fire Ins. Co., 84 Iowa 135, 50 N. W. 558; Teasdale v. City of New York Ins. Co., supra; Nicholas v. Iowa Merchants Mut. Ins. Co., supra.

Except for the period from July 6 to August 15, 1944, defendant in effect denied liability. However, it made no objection to the sufficiency of the proofs. It took the position benefits were payable only for the period plaintiff was absolutely helpless and that plaintiff was able to do work requiring no physical exertion. It also attempted to scale down his claim

672

and to negotiate settlements. Some of plaintiff's letters requesting attention and payment were unanswered. Many of defendant's statements in its letters were equivocal and evasive. A number of its letters contained blank proofs of loss and requested their execution and return although it appears defendant knew the only question or pretended question was "the meaning of total disability." We hold there was sufficient showing of waiver to have warranted the submission to the, jury of that question.

■■■ III. Another ground of the motion for directed verdict was the asserted breach of a policy provision requiring the attendance of a physician. The provision is neither contained in nor referred to in the insuring clause which merely provides for payment during continuous total disability from sickness. However, a paragraph in another part of the policy states continuous disability shall mean the period "during which the Insured receives personal medical attendance at least once in every ten days by a licensed physician * * *." This so-called definition would give a meaning to disability different from that expressed in the insuring clause. Disability in and of itself certainly does not mean nor include regular attendance by a physician. We need not determine whether the quoted language results in an ambiguity to be resolved in favor of the assured by giving effect to the language of the insuring clause. Brush v. Washington Nat. Ins. Co., 230 Iowa 872, 299 N. W. 403, and citations. Cook v. Benefit League, 76 Minn. 382, 79 N. W. 320. In any event, it is merely an exception in the guise of a definition. Its breach would be a matter of defense, to be proved by defendant. Jones v. United States Mut. Acc. Assn., 92 Iowa 652, 657, 658, 61 N. W. 485; Sutherland v. Standard L. & Acc. Ins. Co., 87 Iowa 505, 54 N. W. 453; Christy v. Great Northern L. Ins. Co., 238 Mo. App. 525, 181 S. W. 2d 663.

The breach asserted concerns plaintiff's having been attended by a chiropractor. It is defendant's theory that a chiropractor is not a "licensed physician" within the meaning of the policy. Whether this theory is sound need not be determined. Decisions based upon statutes of other states are not in agreement. Erdman v. Great Northern L. Ins. Co., 253 Mich.

579, 235 N. W. 260; Williams v. Capital Life & Health Ins. Co., 209 S. C. 512, 41 S. E. 2d 208; Isaacson v. Wisconsin Cas. Assn., 187 Wis. 25, 203 N. W. 918.

However, the right to claim a forfeiture for breach of this condition may be waived. Decisions of this court hereinbefore cited enunciate the rules governing waiver and are here applicable. See, also, Sanborn v. Income Guaranty Co., 244 Mich. 99, 221 N. W. 162; Commercial Cas. Ins. Co. v. Campfield, 243 Ill. App. 453; DeSoto Life Ins. Co. v. Barham, 210 Ark. 467, 196 S. W. 2d 592.

In this case the evidence shows the various proofs of loss advised defendant plaintiff was attended by a chiropractor. Defendant made no objection to this but tendered payment for part of the disability covered thereby. Its refusal to pay was predicated solely upon its theory that total disability meant helplessness. It negotiated with plaintiff upon that theory. Not until the motion for directed verdict did defendant claim plaintiff's rights to disability payments were forfeited because he was attended by a chiropractor. We are satisfied the evidence of waiver by defendant of this provision was sufficient to warrant submission to the jury of that question.

Furthermore, there was evidence that of various physicians contacted none would come to the farm to attend plaintiff. Eventually his wife brought the chiropractor. Later when plaintiff became able to travel he was taken to the office of various doctors. Some of these were too busy to see him. Others examined and prescribed for him. They agreed rest was the basic treatment for his heart ailment.

Provisions in policies of health insurance requiring the attendance of a physician are valid, if reasonable. 1 Appleman Insurance Law and Practice, section 655; 29 Am. Jur., Insurance, section 1174. However, most authorities hold such provisions should be liberally construed in favor of the insured and there is considerable authority that such provisions are only evidentiary in effect or that failure to comply therewith may be excused. World Ins. Co. v. Johnson, Tex. Civ. App., 193 S. W. 2d 275; Davidson v. First American Ins. Co., 129 Neb. 184, 261 N. W. 144; Hodgson v. Mutual Benefit Health &

Acc. Assn., 153 Kan. 511, 112 P. 2d 121; Brandt v. Mutual Benefit Health & Acc. Assn., Tenn. App., 202 S. W. 2d 827; Commercial Cas. Ins. Co. v. Campfield, 243 Ill. App. 453; Conaway v. Commonwealth Cas. Co., 225 Mo. App. 421, 37 S. W. 2d 493; Rechtzigel v. National Cas. Co., 143 Minn. 302, 173 N. W. 670; 45 C. J. S. 1177, Insurance, section 980; 115 A. L. R. annotation 1062 et seq.

It is stated in the briefs that the trial court submitted to the jury the question whether the circumstances shown were sufficient to excuse a strict and literal compliance with the provision of the policy requiring the attendance of a licensed physician. Assuming, without deciding, that plaintiff did not strictly and literally comply with the provision in question, we hold the evidence was sufficient to make the question one of fact for the jury.

Plaintiff has moved to dismiss the appeal upon the theory it was taken from the order overruling the motion for directed verdict. We understand the appeal was from the judgment. Having thus appealed defendant could properly limit its assignment of errors to the order overruling its motion for directed verdict. The motion to dismiss is overruled. However, the record does not comply with Rule 340, Rules of Civil Procedure. It was not certified by the trial court. All the evidence is in question-and-answer form and appears to have been copied verbatim from the transcript. The excuse presented by counsel for appellant for failure to comply with the Rule is lack of time under the Rule. If such time was insufficient counsel should have applied for additional time.— Affirmed.

All Justices concur.