23834. JEFFERSON STANDARD LIFE INSURANCE COMPANY *v.* OLIFF, by next friend.

DECIDED JANUARY 19, 1935.

*Bryan, Middlebrooks & Carter, John A. Dunaway, J. B. Moore, Smith, Wharton & Hudgins,* for plaintiff in error.

*Highsmith & Highsmith,* contra.

BROYLES, C. J. R. N. Oliff Jr., by next friend, brought suit against the Jefferson Standard Life Insurance Company under the disability provisions of a life-insurance policy which provided that in case of total disability the company would pay the insured monthly one per cent. of the face amount of the policy. Verdict and judgment were rendered for the plaintiff, and the defendant made a motion for a new trial, which was overruled. On this judgment the defendant assigns error.

The undisputed evidence shows that the policy was issued on October 1, 1926, when the plaintiff was eleven years old, and that on April 22, 1932, his right arm was amputated above the elbow. He contends that this injury resulted in total disability, under the terms of the policy and its construction by the courts. The defendant, in its general and special grounds of the motion for a new trial, contends that the evidence did not authorize a finding of total disability. In the application for insurance the plaintiff's occupation was listed as "School boy. Now a farmer." The evi-

dence showed that the plaintiff lived and worked on a farm at the time the insurance was issued and from that time to the date of his injury; that his injury occurred while doing work on the farm; that he worked on the farm in the afternoons after school, on Saturdays, on holidays, and during the summer months. He testified: "I would be doing some kind of work to be done on the farm every day. Between the time this policy was issued in 1926 and the time of my injuries I did not do any kind of work except work on the farm. I have not done any kind of work than that. I do not know how to do any work except the work I have spoken of on the farm. There is no other kind of work that I know how to do except work on the farm. · . . The loss of my arm was the main thing that made it impossible for me to do the work that I had been doing before I lost my arm. The loss of my arm was the reason why I couldn't do the work, the work I had been doing. Since I lost my arm I can not plough, I can not hoe, I can not pick cotton, I can not shuck corn, I can not feed mules and shuck corn to feed the mules, I can not cut wood. I can not do any kind of work I did on the farm before I lost my arm, and that is on account of the loss of my arm." He testified also that he could not pull corn where it was necessary to slip shuck it, that is, "break it out in the shuck after breaking it where it goes on the stalk." His testimony also showed that he could not draw water for the stock, since, having only one arm, he could not hold the windlass and at the same time pull the bucket to one side and set it down. It is true that on cross-examination he admitted that he was going to school at the time of the trial and that he went to school as regularly as most pupils do; that he drove himself and his younger brothers and sisters in his father's automobile to school; that he sometimes rode a mule on the farm and gathered in his father's stock; that he had not tried to feed the hogs; that he had tried three or four times to learn to milk the cows with his left hand; that raising chickens is light work, but that he could not attend to them properly, although he could water them if somebody else would draw the water, as he could carry a gallon bucket of water. However, the jury were authorized to find from his testimony as a whole that he was incapacitated from performing a substantial part of his ordinary duties on the farm, and, therefore, that he was totally disabled within the meaning of the provision of the policy

of insurance sued upon, as held in numerous decisions of the Supreme Court and of this court. In a unanimous decision of the Supreme Court in *Cato* v. *Ætna Life Ins. Co.*, 164 *Ga.* 392 (138 S. E. 787), which has been consistently adhered to, the court said: "When the insured is incapacitated from performing any substantial part of his ordinary duties, a case of total disability is presented, although he is still able to perform some parts of his work. Total disability is inability to do substantially all of the material acts necessary to the transaction of the insured's occupation, in substantially his customary and usual manner." See also *Marchant* v. *N. Y. Life Ins. Co.*, 42 *Ga. App.* 11 (2) (155 S. E. 221); *N. Y. Life Ins. Co.* v. *Oliver*, 45 *Ga. App.* 756 (165 S. E. 840); *Travelers Ins. Co.* v. *Sanders*, 47 *Ga. App.* 327 (2) (170 S. E. 387); *South* v. *Prudential Ins. Co.*, 47 *Ga. App.* 590 (171 S. E. 215). The fact that the plaintiff was able to attend school and do some light farm work does not capacitate him to do substantially *all* the material acts necessary to his occupation. In *N. Y. Life Ins. Co.* v. *Thompson*, 45 *Ga. App.* 638 (165 S. E. 847), Thompson sued upon an insurance policy containing a disability clause similar to the one in the instant case. "The petition showed that at the time he lost his leg he was about seventeen years of age and was a school boy. The defendant demurred generally on the grounds that no cause of action was set forth in the petition, and that the mere loss of a leg by a boy of the age stated does not amount to total and permanent disability within the terms of the policy. The court overruled this demurrer and the defendant excepted." The Court of Appeals affirmed the judgment of the trial court, citing the *Cato* case, supra. The insurance company carried the case by certorari to the Supreme Court, and that court affirmed the judgment of the Court of Appeals. 177 *Ga.* 898 (172 S. E. 3).

The evidence authorized the verdict, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*