Frank Hoover, Appellee, v. Mutual Trust Life Insurance Company, Appellant.

No. 44433.

December 13, 1938.

Henry & Henry, for appellant.

Mitchell & Loth, for appellee.

Kintzinger, J.—In 1927 the plaintiff, who was a farmer, purchased three $1,000 life insurance policies from the defendant, which also provided for the payment of $10 a month on

each policy in case of plaintiff's total and permanent disability. In 1933 plaintiff developed an illness known as arthritis. The evidence tends to show that this illness was progressive and caused plaintiff considerable pain and suffering prior to 1937, at which time he alleges that he became totally and permanently disabled, for which he claims benefits under the policies.

Among other things the policies provide that:

"Disability shall be deemed to be total when it is of such an extent that the Insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value, and such total disability shall be presumed to be permanent (1) whenever the Insured will presumably be so totally disabled for life, or (2) when it is present and has existed continuously for not less than three months immediately preceding receipt of proof thereof."

It is conceded by the record that the policies in question were in force, premiums had been paid, and the defendant had been duly notified of plaintiff's claim. It is also conceded that plaintiff had been suffering much pain and was to a great extent permanently disabled from and after January 1, 1937.

The only question raised in this case is whether or not the plaintiff was so totally and permanently disabled as to entitle him to the benefits under the policy.

At the close of plaintiff's testimony, the defendant filed a motion for a directed verdict in its favor for the alleged reason that the evidence failed to establish that plaintiff's disability was so total and permanent as to entitle him to compensation under the policies. The court overruled this motion, and upon plaintiff's evidence submitted the case to the jury, which returned a verdict in favor of plaintiff. Judgment was thereupon entered against the defendant, and defendant appeals.

The plaintiff's evidence tends to show that he became afflicted with arthritis in 1933. This condition was progressive and during much of the time between 1933 and January, 1937, the plaintiff was unable to perform much physical labor or service. The last work he did was in the fall of 1936. At that time he assisted filling a silo for a short time. After doing this work he was confined to his bed and laid up as a result thereof for several days. Before his illness, plaintiff was a strong, healthy, robust man and did practically all the work on his 320

acre farm. In 1933 he had one hired man and later was compelled to have additional help. The plaintiff had been a thrifty farmer and in his healthy days he raised considerable grain and cattle. The evidence shows that with the additional help of three or four hired men he continued farming after he became ill but was unable to produce as many farm products, cattle, and hogs as when the farm was operated by himself before he was afflicted with arthritis.

Appellant contends that, although he was ill and disabled, he was able to direct the operation of the farm and that, because of his "managerial" or "supervisory" ability, he was engaged in an occupation, was not totally disabled, and is therefore not entitled to recover.

The record shows, however, that from the latter part of 1936 until the present time, he could not get into his fields or on rough plowed ground; that he has been unable to do any chores since 1936; that he is unable to stoop or do any milking; that he cannot drive a tractor or operate any farm equipment, nor handle, harness, or drive horses; that he can do nothing towards feeding or caring for his cattle; that he could only hobble around; that since 1937 he suffered much pain when attempting to walk, stoop, or performing any work requiring exercise.

It is true that the operation of his farm did, with additional help and under his direction, produce a revenue; but this income might well be found by the jury to have been the earnings of his property and not of any occupation of his own. While his business was that of a farmer, it is contended by appellant that the slight mental exertion performed in giving general directions to his hired men should be considered an occupation. Regarding this matter, plaintiff says:

"With respect to instructing the men, I give them a general line of work and they are supposed to be able to follow it. I aim to hire men accustomed to do farm work and go ahead with it. It is not my intention to continually tell them, because if it was, I couldn't use these particular men. *It would be impossible for me to follow them around, or to be a straw boss, or anything of that kind.* I give these men their general line of work and they go ahead with it. I don't go out and boss them each day or give them instructions. Really all I can do on the farm is to

tell the boys what I would like to have them do and rely on them to go ahead and do it."

The testimony also shows that such instructions and directions were often given when he was confined to his bed, and that he was unable to go into the fields to inspect the work, give directions from a personal supervision of the conditions on the farm, or see that his directions were carried out. The following testimony of the plaintiff was substantially supported and corroborated by other witnesses. He says:

"Early in September, 1936, I tried to help silo-filling to this extent: I held the spout so silage would drop somewhat evenly over the silo. After that I went to bed and wasn't able to get up for a few days. That is the last farm work I have done. Since that time, I have not done any chores. I can't get down to milk, and if I was down there, I couldn't get back up. I don't do any work about the barn or yard. I haven't attempted to lately because when I did try to do anything, then I would be down in bed. By not working at all, I can keep on my feet. I haven't been able to do any work with the machinery on the farm, or drive any of the horses, or power machinery, or anything of that kind. I haven't done any of that kind of work for four or five years; that is the reason I went into the horse business, because I couldn't do a lot of farm work; and, thinking I could have some income from this work, I purchased the horse. I found I couldn't do my farm work properly, and so I tried to do something else. I wasn't able to do even that after the end of the 1936 season, and of course I haven't taken care of any horses; the hired man did that. In 1937, I hired a man to take the horse around and care for it; an extra man over any I had had before. I don't know of any other work I could do. I had to have all the field work done by hired help of course, and I had four men working. One of them was a stranger who had just come there and said he could operate a corn planter, so I sent him in the field to plant corn. I get out there (in the fields) by driving. I can't walk over the farm; there are parts of it I haven't been on for two years. I sometimes walk about the place perhaps fifteen minutes; sometimes I might be out as much as thirty minutes or on fine days around an hour. I might walk about a block, and then stand about a time. After I walk a block I am very tired and have to stop and rest.

Since September, 1936, I have to stay indoors lying down or resting more than half the daytime period, some days more than others. Some days I am not out at all. The weather has much to do with that. When I drive the car I do it with my right arm; if I use the left arm on the wheel for twelve or fifteen minutes, it will fall down in my lap just from weakness. I can give some general directions to the hired men about how I want the work done; but as far as going out in the field and supervising it or seeing that they do it, I haven't done that. If I did I would be right in bed again, and so I don't. I have found from my experience that if I go to the field it puts me in bed for a period of time. Really, all I can do on the farm is tell the boys what I would like them to do, and rely on them to do it. I wouldn't be able to do any kind of work that I know of. I have continuous pain in my back. Exertion of any kind makes it more severe, even by moving about any amount. Early in 1937 I went to the Veterans' Hospital. My condition hasn't improved any since.''

Plaintiff's doctor testified that he found a definite stiffness and rigidity of the muscles of the lower part of the spine making it difficult for him to move up and down. He couldn't pick objects off the floor without sort of crawling with his hands for support. An attempt to pick up objects off the floor on account of the pain and rigidity was pretty nearly impossible. Manipulations caused pain in his back. He further says:

''In this particular case, I found difficulty both with the bones and the muscles. In my opinion, both these combined cause the pain and stiffness, and the inability to bend and to move about readily. In the average case of this type there is a tendency to gradually get worse. * * * Right now you would have to say that there is no prospect of improvement in his condition because he gives a history of trouble over years duration with no improvement at all, and these cases usually progress so you will have to say that he won't recover, although I can't be dead sure of that. I don't believe the man can do manual labor. With respect to occupations that would not involve manual labor but would involve walking about or sitting for considerable periods in one position, he could probably get away with it for say an hour, then he might try it again but he would be practically disabled. If he walked more than a quar-

ter of a mile he would have considerable pain and probably have to quit. I don't know of any kind of effort or activity he could engage in that would require sustained or continuous application for more than an hour or two, unless it would be some mental activity where he wouldn't have to move any. That would be something that anybody could do that had a mind. I mean that he might do something that merely required the use of his mind.''

Such is the substance of the evidence as shown by the record in this case. The contract provides: ''Disability shall be deemed to be total when it is of such an extent that the Insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value.'' So the question in this case, therefore, is whether or not the insured is prevented from engaging in any occupation or performing any work for compensation of financial value because of his illness.

Appellant contends that this case is ruled by the case of Lyon v. The Railway Passenger Assurance Co., 46 Iowa 631, and other cases cited. In that case the contract provided that: ''The Railway Passengers' Assurance Company * * * will indemnify the assured * * * in the sum of fifteen dollars per week, against loss of time, * * * while totally disabled and prevented from the transaction of all kinds of business, solely by reason of bodily injuries effected through outward and accidental violence.''

In that case the jury was directed that plaintiff may recover though he be able to do some parts of the accustomed work pertaining to his business, so long as he cannot to some extent do all parts and engage in all the employment thereof. In that case the court said further at page 634:

''The contract of insurance binds defendant to indemnify plaintiff for loss of time while totally disabled, and prevented from the transaction of *all kinds of business*. The court tells the jury that this does not mean what it plainly says, but that defendant will indemnify plaintiff for loss of time while disabled, and prevented from the transaction of any business in which he was qualified to engage. * * * The language of the parties is plain, unambiguous and needs no construction. It provides that defendant shall be liable for loss occasioned by being totally disabled from all kinds of business. * * * It cannot be claimed that it means that defendant will indemnify on account

of loss sustained by being partially disabled from some kinds of business: And yet this is the construction which the two instructions we have been considering place upon it."

It is obvious from the record in the case at bar that a jury could well find that it would be impossible for plaintiff to secure a position from anyone else to operate a farm under the physical condition which the evidence shows he was in since the beginning of 1937.

True, he did give some directions to hired men as to the manner of operating his farm, but appellee contends that such slight matters done by him cannot prevent him from securing the benefits of his policies, simply because he gives some directions for the performance of work necessary to raise crops on his own land.

A more liberal rule than that announced in Lyon v. The Railway Passenger Assurance Co., supra, has been adopted in this and many other states. The liberal rule is that the "total disability" contemplated by a life insurance policy of this character does not mean as its literal construction would require— a state of absolute helplessness; on the contrary, the disability contemplated means, under the liberal rule, inability to do all the substantial and material acts necessary to the prosecution of the business or occupation of the assured or some other business or occupation which he might enter in a customary and usual manner. Clarkson v. New York L. Ins. Co., D. C., 4 F. Supp. 791; Prudential Ins. Co. v. South, 179 Ga. 653, 177 S. E. 499, 98 A. L. R. 781. This is the rule in the majority of states and is supported by many cases set out in the annotation to the case of Prudential Ins. Co. v. South, supra, 98 A. L. R. 789.

The rule adopted in most jurisdictions has been approved and adopted by this court in an able opinion written by Justice Anderson in Prusiner v. Massachusetts B. & Ins. Co., 221 Iowa 572, 265 N. W. 919, wherein we said [page 578 of 221 Iowa, page 922 of 265 N. W.]:

"It is the settled rule of this court that in interpreting similar clauses in contracts of insurance the language must be given a reasonable construction rather than a literal construction in determining the meaning of disability or total disability as contained in these various contracts of insurance. Elmore v.

Surety Company, 207 Iowa 872, 224 N. W. 32; Garden v. Insurance Co., 218 Iowa 1094, 254 N. W. 287. This rule has also been adopted by a majority of our sister states. See Great Northern Casualty Company v. McCollough, 96 Ind. App. 506, 174 N. E. 103, 106, and many cases therein cited, including decisions from Vermont, Michigan, Maine, New Jersey, California, Oregon, Mississippi, Texas, and others.''

In the Prusiner case this court quotes with approval from the case of Great Northern Casualty Company v. McCollough, supra, and says:

''In the McCollough case supra, the Supreme Court of Indiana approved an instruction interpreting the provision contained in an insurance policy 'wholly and continuously disables and prevents the insured from performing any and every duty pertaining to any business or occupation.' The approved instruction was in the following language:

'' 'The meaning of the words ''wholly and continuously disables and prevents the insured from performing each and every duty pertaining to any business or occupation'' is not that plaintiff must have been disabled so as to prevent her from doing anything whatsoever pertaining to any duty of any business or occupation, but that she must be disabled to the extent that she could not do any and every duty pertaining to any business or occupation. She might be able to do a part and not be able to do all, and because she was not able to do all be deemed to be wholly disabled from doing any and every kind, provided, of course, that she was so disabled as to be prevented from doing substantially all the necessary and material things in any occupation requiring her own exertions in substantially her customary and usual manner of so doing. She might be able to do personally minor and trivial things, not requiring much time or physical labor, and through others, acting under her direction, to do heavier things requiring physical exertion, which in the ordinary and proper performance of her duties in any occupation which she had or might theretofore have done personally and yet, because of inability to do heavier things and more material things personally, be said to be wholly disabled within the terms of her policy; provided further, that the things she was unable personally to do would constitute substantially all of the duties of the employment, if any, in which she was

engaged at the time of her injury or any occupation into which she might have entered.'

"The foregoing involves the liberal rule of construction adopted by this court and a majority of our sister courts as is shown by the following excerpts.

"As was said in American Liability Co. v. Bowman, 65 Ind. App. 109, 114 N. E. 992, 995:

" 'The rule prevails in this and most jurisdictions that provisions in a policy for total disability, irrespective of the technical variations in the language employed, should be given a rational and practical construction; that the phrase "total disability" is a relative term, depending in a measure upon the nature of the employment, the capabilities of the injured person, and likewise the circumstances and peculiar facts of each particular case. It is usually a question of fact to be determined by the court or jury trying the case, and was such question in the case at bar.' "

This rule is also supported by the following cases: Wood v. Federal Life Ins. Co., 224 Iowa 179, 277 N. W. 241; Kurth v. Continental Life Ins. Co., 211 Iowa 736, 234 N. W. 201; Garden v. New England Mutual Life Ins. Co., 218 Iowa 1094, 254 N. W. 287; Clarke v. Travelers' Ins. Co., 94 Vt. 383, 111 A. 449; Hohn v. Interstate Cas. Co., 115 Mich. 79, 72 N. W. 1105; Young v. Insurance Co., 80 Me. 244, 13 A. 896; Commercial Travelers Assn. v. Springsteen, 23 Ind. App. 657, 55 N. E. 973; Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852; Manuel v. Metropolitan Life Ins. Co., La. App., 139 So. 548; Mutual Life Ins. Co. v. Dowdle, 189 Ark. 296, 71 S. W. 2d 691; Colovos v. Home L. Ins. Co., 83 Utah 401, 28 P. 2d 607; Jefferson Standard L. Ins. Co. v. Oliff, 50 Ga. App. 407, 178 S. E. 318; Phillips v. Mutual L. Ins. Co., La. App., 155 So. 487; Aetna L. Ins. Co. v. Davis, 187 Ark. 398, 60 S. W. 2d 912; Baker v. Aetna L. Ins. Co., 206 N. C. 106, 172 S. E. 882.

In Metropolitan Life Ins. Co. v. Blue, 222 Ala. 665, 133 So. 707, 79 A. L. R. 852, the court said substantially that:

"Total disability may exist though it is physically possible for the insured to perform occasional acts as part of his employment or business. * * * The term is a relative term. * * * 'Prevented from engaging in any work or occupation' as ap-

plied to this case, means prevented from doing substantial and profitable work in his profession."

"A prosperous and hard-working farmer, who * * * cannot perform substantially all of the material acts necessary to farming in substantially the customary and usual manner, or perform any heavy manual labor, is * * * regarded as totally disabled * * * (though) he continues to supervise the operation of his farms, trades cattle, sells products, feeds chickens, and does some other light work." Colovos v. Home L. Ins. Co., 83 Utah, 401, 28 P. 2d. 607, 98 A. L. R. 815.

In the case of Kurth v. Continental Life Ins. Co., 211 Iowa 736, 1. c. 742, 234 N. W. 201, 1. c. 204, in discussing the meaning of total and permanent disability, this court said:

"It is common knowledge that in none of these stated causes of disability would the unfortunate victim be wholly and continuously prevented thereby from pursuing any gainful occupation. Persons so afflicted are seen on frequent occasions, engaged in various employments whereby they earn a livelihood, without resorting to the near-beggary vocation of selling papers, pencils, and shoe strings in public places. It is apparent by this clause, inserted upon the volition of the company, and not at the request of the appellee, that it was never intended that the insured be rendered absolutely helpless and continue to be absolutely helpless before becoming entitled to the benefits promised. If it were otherwise, then the appellee must suffer also a destruction of his mental faculties, as well as his physical functions."

In the recent case of Wood v. Federal Life Ins. Co., 224 Iowa 179, 277 N. W. 241, this court, in an exhaustive opinion written by Justice Richards, also held that in cases showing a similar record to the case at bar, the question of whether or not a person is totally and permanently disabled so as to prevent him from engaging in any occupation or performing any work for compensation is for the jury.

In the case at bar there is evidence tending to show that the plaintiff was substantially unable to perform any work or labor upon his farm since the beginning of 1937, owing to his physical condition resulting from arthritis. Our ruling in this case is controlled by the case of Prusiner v. Massachusetts

1044

B. & Ins. Co., supra. This question has been fully considered and discussed in that case, and we deem it unnecessary to pursue the question further. A contrary rule would require us to hold that a person must be held to be absolutely helpless, both mentally and physically, before it could be said he was totally and permanently disabled. We are therefore constrained to hold that the learned lower court was right in submitting to the jury the question of whether or not plaintiff was totally and permanently disabled under the terms of the policies.

In so far as our holding herein may be in conflict with the rule announced in Lyon v. The Railway Passenger Assurance Co., supra, that case is hereby overruled.

For the reasons hereinabove expressed, the judgment of the lower court is hereby affirmed.—Affirmed.

SAGER, C. J., and ANDERSON, MITCHELL, HAMILTON, RICHARDS, DONEGAN, STIGER and MILLER, JJ., concur.