C. J. ELLER, Plaintiff, Appellee, v. PREFERRED ACCIDENT INSURANCE COMPANY, Defendant, Appellant.

No. 44545

MARCH 7, 1939.

REHEARING DENIED JUNE 23, 1939.

Parrish, Guthrie, Colflesh & O'Brien, for appellant.

A. J. Myers, for appellee.

STIGER, J.—On January 21, 1937, plaintiff, a lawyer, slipped and fell on an icy sidewalk and suffered serious and painful injuries.

On May 27, 1937, he commenced this action on an accident insurance policy issued by defendant to recover indemnity for total disability alleged to have resulted from his injury. Plaintiff alleged in his petition that defendant had paid him the sum of $220 under the terms of the policy on or about February 24, 1937,which payment was without prejudice to additional claims from January 21, 1937, to February 24, 1937, and was without prejudice to any claims from and after February 24, 1937. He further states that there is a balance due him under the terms of the policy of $700 for total disability from February 11, 1937 to May 27, 1937 and hospital indemnity not to exceed the sum of $223.40, and that the action is without prejudice to actions for future indemnity claims.

The defense to the action is that plaintiff has been paid the sum of $220 covering three weeks' total disability at $50 a week and two weeks' partial disability at $25 per week and surgeon's fee of $20, and is not entitled to any further payment on account of total disability under the terms and provisions of the policy because the policy provides that plaintiff can recover only for continuous total disability, and, plaintiff having been totally disabled for three weeks, which period was followed by partial disability, plaintiff cannot recover for subsequent total disability.

Defendant further states in its answer that the injuries received by the plaintiff did not, from the date of the accident, and independently and exclusively of all other causes, directly and continuously totally disable plaintiff and prevent him from performing any and every kind of duty pertaining to his occupation. The jury returned a verdict for the plaintiff in the sum of $828.52.

The total disability clause of the policy reads:

"TOTAL LOSS OF TIME — If such bodily injury * * * shall directly, independently and exclusively of all other causes and within thirty days from date of accident, wholly and continuously disable and prevent the Insured from attending to any and every kind of duty pertaining to his occupation, the Company will pay the Insured so long as he lives and is so disabled, THE SINGLE WEEKLY INDEMNITY AFOREMENTIONED."

PERIOD UNLIMITED

The provision for payment for partial disability is as follows:

"PARTIAL LOSS OF TIME — If such bodily injury, independently and exclusively of all other causes, shall, either within thirty days from date of accident or from date of cessation of total disability, continuously disable and prevent the Insured from performing work essential to the duties pertaining to his occupation, the Company will pay for the period of such disability, not exceeding fifty-two consecutive weeks, a weekly indemnity of ONE-HALF OF THE SINGLE WEEKLY INDEMNITY AFOREMENTIONED."

52 WEEKS LIMIT

Defendant's main proposition is that plaintiff filed a claim with defendant for three weeks' total and two weeks' partial disability; that plaintiff's own statements in his proof of claim admitted that the continuity of total disability was broken; that defendant paid plaintiff for three weeks' total and two weeks' partial disability, and, because the policy states that plaintiff can recover total disability only during the time such disability is continuous, he is precluded from claiming future total disability.

Plaintiff's position is that; (1), the sum of $220 was paid to him by defendant for total disability, and (2) such payment was without prejudice to an additional claim for total disability.

In the case of Hoover v. Mutual Trust Life Insurance Co., 225 Iowa 1034, 282 N. W. 781, the accident policy provided that: "Disability shall be deemed to be total when it is of such an extent that the insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value."

The court abandoned the rule announced in Lyon v. Railway Passenger Assur. Co., 46 Iowa 631, and adopted the so-called "liberal" rule of construction of the words "total disability" and stated this rule in the following language:

"The liberal rule is that the 'total disability' contemplated by a life insurance policy of this character does not mean as its literal construction would require—a state of absolute helplessness; on the contrary, the disability contemplated means, under the liberal rule, inability to do all the substantial and material acts necessary to the prosecution of the business or occupation of the assured or some other business or occupation which he might enter in a customary and usual manner."

Plaintiff was at the Mayo Clinic in Rochester on two occasions during the period from March 22 to April 16, 1937, and in the Iowa Methodist Hospital in Des Moines from May 10 to May 19, and May 25 to June 9. He was under Dr. Steindler's care at Iowa City from June 28, 1937, to July 15, 1937. Dr. Steindler testified in part as follows:

"He was first placed in bed with traction applied to the head, and was then supplied with an adjustable steel collar and discharged from the hospital on July 15, 1937, with this collar.

He was discharged as improved but not as cured. He is a man of very high-strung nervous system and I am sure he would have a relapse sooner or later if he goes back to work. He must continue to wear the steel collar.''

Dr. Steindler also testified to the extreme pain suffered by plaintiff.

Dr. Griffin testified that when he first saw Mr. Eller the first of February, 1937:

''My diagnosis was that he had fractured the ninth and tenth ribs and had a tearing of the ligaments of the third and fourth vertebrae, with a crushing of the facettes or the articulating surfaces of the vertebrae on the right side. I advised Mr. Eller to go to Rochester and I afterwards advised him to go to Iowa City. Exhibit 'L' is a head support which I ordered for Mr. Eller to keep the neck from inclining toward the crushed vertebrae, supporting it to prevent a bending toward the affected vertebrae, to keep the head up off the affected parts and to let it fill in instead of absorb.''

Plaintiff testified that:

''During the first five weeks I never slept a wink and I would just fall from exhaustion, and after that I got a little sleep when I was walking the floor so that I would fall over exhausted and I never got any sleep of a natural nature until I went to Iowa City on the 28 of June and they put me in traction.''

Plaintiff went to his office, but because of pain and the nature of his injury, he could not carry on his business. Plaintiff was not only unable to perform all of the substantial and material acts necessary to the prosecution of his business but was unable to perform *any* of the substantial and material acts necessary to the prosecution of his business. So, *in fact,* plaintiff was continuously and totally disabled from the time of his injury to a period beyond May 27, 1937.

The next question to determine is whether plaintiff, by filing his intermediate report and proof of claim, Exhibit C, and accepting the draft for $220 under the circumstances hereinafter shown, precluded himself from claiming additional total disability.

Defendant states that the court erred in overruling the defendant's motion to withdraw from the consideration of the jury all claims for total disability under the terms of the policy, Exhibit A, and in overruling the defendant's motion to direct the jury to return a verdict for the defendant upon the question of total disability under the terms and conditions of the policy, Exhibit A.

Defendant's position is stated in the following language:

"We submit to this court that this is a suit on a contract of insurance, Exhibit 'A', that the parties are bound by the clear and unambiguous terms of the contract; that said contract provides by its express terms that the periods of total and partial disability must be continuous; that the *undisputed* evidence shows that the plaintiff, on his own election and by his own statement in the Intermediate Report, Exhibit 'C', fixed the date of the termination of his total disability and the date of the commencement of his partial disability; that the defendant acted upon the statements made in the plaintiff's intermediate proof and accepted the same and paid the defendant for a period of four weeks' total disability and a subsequent period of two weeks' partial disability; that the continuity of total disability was admittedly broken by a period of partial disability; that if there is a period of total disability followed by a period of partial disability and afterwards there is claimed to be another period of total disability, there can be no recovery for the latter period of total disability, under the express terms and conditions of the policy contract, Exhibit 'A', and that the plaintiff is precluded from claiming for further total disability under the said terms and provisions of the contract sued upon, and it was error to submit the issue of such further subsequent total disability to the jury."

We cannot agree with defendant's claim that the *undisputed evidence* shows that plaintiff fixed the date of the termination of his total disability and the date of the commencement of the partial disability in his intermediate report, Exhibit C.

The material evidence pertinent to this assignment is substantially as follows:

The injury occurred on January 21, 1937. On February 24, 1937, plaintiff telephoned C. E. Snow, vice president of Upham Brothers Company, insurance managers and adjusters for

defendant, and again told him about his injuries, stating that he was unable to sleep or get any sleep in Des Moines and was going to Rochester, and asked him if he could make a payment on his claim without any prejudice to the company or to plaintiff because ''I didn't know how bad I was hurt and Mr. Snow stated that he could.'' Plaintiff then stated to him:

''I have been confined to the house for three weeks without being at the office. I came down town to take treatments at the doctor's and I have been able to be down town and at the office but I have not been able to do anything.''

It will be observed that plaintiff stated in substance that he had been *totally disabled* at least to *February 24*. Plaintiff further stated to Mr. Snow:

''You would have to pay the partial anyway and it would be an accommodation to me to pay to the extent of the partial for two weeks but that would be without prejudice to my claims or to the defense of the company.''

Mr. Snow replied that ''it was all right.'' No objection was made to this testimony. Thereupon, plaintiff filed with Mr. Snow, his intermediate proof, Exhibit C.

We set out the following questions and answers appearing in this Exhibit:

''Q. 8. Between what dates were you so disabled in consequence of said injury that you gave no attention whatever to the duties pertaining to any business or occupation? A. Between the 21st day of January 1937 and the 11th day of February, 1937.

''Q. 9. Were you, immediately following the above-mentioned period of total disability, partially disabled from attending to some one or more of the important duties pertaining to your occupation? If so, between what dates? A. From the 10th day of January, 1937, to the undetermined as yet and *maybe totally disabled* that is to be determined.''

It will be observed relative to question 9 that plaintiff, though *partially disabled* from attending to some one or more of the important duties pertaining to his occupation, would, under the rule established in the case of Hoover v. Mutual Trust

Life Insurance Company, supra, be during such period *totally disabled*. He also states "maybe totally disabled".

"Q. 13. For what period of time is indemnity claimed by you? A. For *total disability* 3 weeks and..........days for the present Will be determined as I contemplate going to Rochester, Minn., or Iowa City soon.

~~For partial disability~~ ~~weeks and~~ ~~days"~~

The words "for partial disability," etc., are lined out.

The answer to question thirteen clearly contemplates that the question of total disability after the first three weeks would be left open for future negotiation.

A letter, Exhibit B, from plaintiff to Upham Brothers Company, dated February 24, 1937, accompanied Exhibit C. This letter reads as follows:

"Feb. 24, 1937.

"Upham Brothers Company,
"1200 So. Surety Bldg.,
"Des Moines, Iowa
"My dear Sirs:

"Please find enclosed Partial Claim Blank showing three weeks' total and two weeks' partial disability to the 25th instant, and $20.00 for reducing fracture—making a total under Policy No. 839211 to date $220.00, which you can deliver to me as partial payment or in payment of the aforesaid but without prejudice to future claim for either partial or total disability.

"I don't want either your company or myself prejudiced by the payment as I intend to go to Rochester or Iowa City soon to find out just how badly my neck, head and nervous system are injured; and if I am confined in the hospital in the near future by reason of this injury, I don't want to be prejudiced by the payment if I have protection under the policy.

"Very truly yours,
"Chester J. Eller."

Plaintiff clearly stipulates in the letter, Exhibit B, that the partial payment was to be without prejudice to a future claim for total disability.

On the same day, February 24, 1937, a sight draft was drawn by Upham Brothers Company, by C. E. Snow, vice presi-

dent, on the defendant, the Preferred Accident Insurance Company, payable to plaintiff in the sum of $220. On the face of the sight draft it stated that this sum was in full payment and satisfaction of all claims under the policy on account of disability resulting from accidental injury received by him on the 21st day of January, 1937. The terms of this draft were in direct violation of the terms of Exhibit C and the letter, Exhibit B.

On the back of the draft, the following appears:

"This draft will not be paid unless the following release is signed by the Payee therein named:

"In consideration of the payment of the amount within stated, I do, by the act of endorsing this draft, hereby acknowledge that the said payment is in full and final settlement and release of any and all claims made or to be made by me or by any other person against said Company on account of the accidental injury received by me 21st day of Jan. 1937.

*"Accepted as per intermediary report and letter.*

"Chester J. Eller

"Payee"

Immediately on the receipt of the sight draft, Exhibit D, plaintiff phoned Mr. Snow and stated that he would not accept the draft unless it was without prejudice. Thereupon, plaintiff wrote at the bottom of the release appearing in Exhibit E the following words "accepted as per intermediary report and letter." The sight draft with the above notation appearing thereon was paid by defendant February 26, 1937.

Plaintiff's notation on the draft, accepted and paid by defendant, expressly referred to the intermediate report and letter, which were in the possession of its adjuster, and must be considered a part of the draft by reference. From the time of the injury, plaintiff dealt solely with Upham Brothers Company and there is no contention by defendant that plaintiff should have filed his intermediate report with or addressed his letter, Exhibit B, to any other person than Mr. Snow.

In question thirteen, appearing on Exhibit C, plaintiff drew a line through the words "For partial disability........weeks and........days" and after the words "for total disability 3 weeks and........days" wrote the following words, "for the

present Will be determined as I contemplate going to Rochester, Minn., or Iowa City soon.''

Plaintiff's answer to question 9 ''from the 10th day of February, 1937, to the undetermined as yet, and maybe totally disabled that is to be determined'' was made on February 24, 1937, and clearly refers to the period from February 11, 1937, at which time he was admittedly totally disabled, to February 24.

Defendant claims that Exhibit C must be construed as a definite statement and admission by plaintiff that he was partially disabled after February 11 and thus an admission on plaintiff's part that the continuity of total disability was broken.

We are of the opinion that Exhibit C is susceptible to the construction that plaintiff's claim was based on total disability, or without prejudice to a future claim for total disability. This construction is supported by the letter, Exhibit B. The sight draft, Exhibit D, was drawn by Mr. Snow and delivered to plaintiff immediately on receipt of Exhibits C and B, and, in determining its effect, it must be considered with Exhibits B and C.

The trial court submitted these issues to the jury and the jury returned a verdict for the plaintiff. The jury could have found from plaintiff's evidence that plaintiff wanted a partial payment on his claim, that defendant agreed to make such payment, that plaintiff filed a' claim for total disability and that the duration of total disability was to be left open for future negotiation, or that the payment made was without prejudice to future claims for either partial or total disability. There was sufficient evidence to sustain the verdict.

II. Another assignment of error is that the court erred in overruling the defendant's motion to direct a verdict for the defendant upon the ground that the evidence in this case does not show that the plaintiff was wholly and continuously disabled and prevented from *attending to any and every kind of duty pertaining to his occupation* as provided by the terms of the policy, Exhibit A. Defendant cites in support of this assignment, the cases of Lyon v. Railway Passenger Assurance Co., 46 Iowa 631; Hurley v. Bankers' Life Co., 198 Iowa 1129, 199 N. W. 343, 37 A. L. R. 146. The Hurley case followed the rule announced in the Lyon case.

As stated in division one of this opinion, the strict rule of construction of the words ''total disability'' established in the Lyon case was superseded by the liberal rule adopted in the case

of Hoover v. Mutual Trust Life Insurance Co., 225 Iowa 1034, 282 N. W. 781, supra.

■ III. There is no merit in defendant's third assignment of error which states that the court erred in overruling defendant's motion to direct a verdict upon the ground that no competent evidence was introduced by plaintiff to show that the injuries received by the plaintiff were caused by the accident suffered on January 21, 1937 and that there was no evidence that the injuries were caused directly, independently and exclusively of all other causes, as provided by the policy. The record is replete with evidence that plaintiff's injuries and loss of time were caused directly and exclusively by the injuries received January 21.

■ IV. Defendant next urges that the court erred in sustaining plaintiff's objection to defendant's offer of Exhibit E, being a letter dated February 24, 1937, written by C. E. Snow to the defendant company and delivered to the plaintiff along with the draft, Exhibit D, which the plaintiff had pleaded, produced in court, identified, testified to, and offered in evidence.

The plaintiff did not plead Exhibit E, and his offer of the exhibit was withdrawn. Plaintiff identified Exhibit E as a letter received from Mr. Snow with the sight draft, Exhibit D. He did not testify to the exhibit. Defendant first offered Exhibit E in connection with the cross-examination of plaintiff and plaintiff's claim of fraud. The court reserved its ruling and we do not find that the court ever ruled on this objection. Assuming the court did sustain the objection, it was harmless error because the question of fraud was withdrawn from the jury.

Exhibit E reads as follows:

"THE PREFERRED ACCIDENT INSURANCE
COMPANY OF NEW YORK

"Department: Accident—Automobile—Burglary—Plate Glass.
"To Claim Department.
"From Upham Brothers Co.
"Subject: Claim—Pol. No. 839211, Chester J. Eller.
'Instalment

"February 24, 1937.
"Gentlemen:
"We have today issued Accident draft No. A-55769 for

$220.00, this being an intermediate payment under the above policy.

"Mr. Eller at the present time is partially disabled but in his fall received an injury to his neck. He states it will be necessary for him to go to either Iowa City or to the Mayo Clinic at Rochester for a check-up.

"We are paying him for three weeks total, two weeks partial and a Surgeon's Fee of $20.00.

"The Mutual Benefit of Omaha and the Paul Revere Life have both made similar intermediate settlements.

"Trusting this meets with your approval, we are

Yours very truly,

"Upham Brothers Co.,

"CES:HM "By C. E. Snow.

"P. S. *The intermediate proof blank is enclosed.*" (Italics supplied.)

This exhibit shows Exhibit C was sent defendant by Snow on February 24, 1937.

Defendant also offered Exhibit E in evidence in connection with the direct examination of Mr. Snow. Prior to offering the exhibit, Mr. Snow testified fully, without objection, to the contents of this letter. Though the letter was admissible to show defendant's understanding and purpose of the negotiation, its exclusion was not reversible error.

V. Another assignment of error is that the court erred in admitting any evidence with reference to the payment of hospital bills to the Iowa Methodist Hospital for the reason that any confinement in said hospital was not within 90 days from the date of the accident as provided by the terms of the policy. The provision for hospital indemnity reads:

"An additional weekly indemnity, equal to fifty per cent (50%) of the single weekly indemnity aforementioned will be paid by the company to the insured for the period, not exceeding twenty weeks that the insured is necessarily confined in *a hospital* by reason of a bodily injury for which indemnity is payable under this policy, provided, that the insured be removed to *said hospital* within ninety days from the date of the accident." (Italics supplied.)

Plaintiff was not admitted to the Iowa Methodist Hospital within the 90-day period. He was, however, confined in the

Rochester Clinic from March 22 to March 28, 1937, which was within the 90-day period. Defendant construes this provision to mean that if an insured goes to *a hospital* within 90 days, and subsequently leaves the hospital and the 90-day period expires, that the company is not liable for additional hospital indemnity after the expiration of the 90 days. Defendant claims that the words "said hospital" refer only to the hospital that the insured was removed to within the 90 days.

We can not agree with this construction. This provision purports to give hospital indemnity, not exceeding 20 weeks, during the period plaintiff was necessarily confined in a hospital. It is not necessary that the confinement be in just one hospital. If the insured was confined within several hospitals within the 90 days, he would clearly be entitled to indemnity. It is not the number of hospitals that the policy seeks to limit; the limitation is on the number of weeks that indemnity will be paid. The requirement of the phrase "provided that the insured be removed to said hospital (a hospital) within 90 days from the date of the accident" is that the necessity for confinement in some hospital and the fact of such confinement occur within 90 days from the date of the accident. Plaintiff, having been necessarily confined in a hospital within the 90-day period, it follows that his necessary confinement in another hospital after such period is within this provision for indemnity.

We have examined the remaining assignments of error and they are either disposed of adversely to defendant by our holding in division one of this opinion or are wholly without merit. Defendant's motion to strike appellee's additional brief and argument is sustained. The case is affirmed.—Affirmed.

MITCHELL, C. J., and HAMILTON, BLISS, RICHARDS, SAGER, HALE, OLIVER, and MILLER, JJ., concur.